GARRISON, Judge.
This is an appeal from a judgment of the district court dated January 6, 1987 providing a change from joint custody to sole custody, specifying visitation, phone privileges, holidays, vacations and record access, awarding past due payment for the ADEPT (daycare) program, ordering child support and medical, health and dental payments, revoking a forma pauperis order, and ordering a hearing to determine the amount of trial costs to be taxed to defendant. From that judgment, defendant appeals.
On appeal, defendant raises 4 specifications of error:
1. the trial court erred in awarding sole custody to the mother;
2. the trial court erred in increasing child support;
3. the trial court erred in failing to hold the mother in contempt;
4. the trial court erred in revoking appellant’s forma pauperis order.
The trial court judge provided exceptional written reasons for judgment, attached as appendix “A”.
Turning to the first specification of error, it should be noted that both plaintiff and defendant stated that sole custody was preferable and that joint custody was unworkable. The trial court judge specifically found that joint custody was not in the best interests of the children. This finding is fully supported by the record, especially noting Mr. Cahanin’s erratic and irrational behavior. See written reasons for judgment appendix “A”. It is obvious that sole custody with Mrs. Cahanin is called for in this case.
Defendant’s specification number two is that the trial court erred in increasing child support. This allegation is flatly and patently untrue. The trial court did not increase the child support awarded. In the past Mr. Cahanin was supposed to pay certain parts of the child support award directly to the third party creditor, such as dental payments, the pre-and after-school ADEPT program (daycare) etc. Mr. Cahanin refused to make the third party payments. Accordingly, the trial court moved those payments from direct payment to 3rd parties to under the wage garnishment for the rest of the child support. No increase was made and this specification of error is without merit.
*28 Turning to defendant’s third specification of error, Mr. Cahanin alleges that the mother has failed to comply with the visitation schedule and should be held in contempt because of various continuances granted to both parties in past rules, hearings, etc. The first part of this allegation is flatly untrue and the second is moot.
Turning to defendant’s fourth specification of error defendant argues that the trial court erred in revoking a forma pau-peris in his favor. The trial court correctly found that Mr. Cahanin an engineer with Walk, Haydel was earning income ranging from $1,556.00 a month to $2,832.00 a month throughout the course of this litigation. During the course of this litigation, Cahanin has been before this court on eight occasions:
Published
1. CA-4922 in 1986; 496 So.2d 1060
2. CA-5382 in 1986; 499 So.2d 1296
Unpublished
C-5643 in 1986 CO
C-5810 in 1986 ^
C-6675 in 1986 LO
CA-7946 in 1987 (the instant case) ⅞0
C-1972 in 1987
88-C-0488 in 1988 00
The trial court found that Mr. Cahanin s behavior in part was an attempt to harass Mrs. Cahanin. A review of the entire litigation indicates that Mr. Cahanin is attempting to abuse the judicial process by using meritless litigation as a harassment technique. He had been through numerous attorneys and unfortunately for courts everywhere, has now taken to representing himself. He also had been doing it all free of charge under a forma pauperis which was clearly improperly granted. Indeed, in the instant appeal no appeal costs were paid. The trial court has scheduled hearings to determine how much he owes on the trial court level. At present Mr. Caha-nin owes this court $325.50[1] as follows:
88-C-0488 $ 60.50
CA-5382 60.00 C-5643 35.00
C-6675 60.00
CA-7946 110.00
$325.50
For the reasons discussed, the judgment of the district court is affirmed. Appellant Cahanin is hereby ordered to pay this court appeals costs totaling $325.50.
AFFIRMED.
APPENDIX A
Civil District Court for the Parish of Orleans
State of Louisiana
Domestic Relations Section No. 2
Division “L”
Victoria Gallas Cahanin
Versus
Gregory James Cahanin
Docket No. 5
No. 83-1634
REASONS FOR JUDGMENT
Throughout conferences in my chambers and the tension filled ones in the courtroom, the hostility between the parties was apparent; the parties asserted that they could not communicate with each other to the degree necessary for an effective joint custody arrangement. In fact, each made it clear that he or she believed a sole custody arrangement was preferable, with each seeking to be awarded sole custody. Such was stated on the record in open court and the Court has determined that joint custody is not in the best interest of the children taking into consideration the mandates of C.C. art. 146.
Upon reviewing the testimony of the lengthy trial of 2 April and 16 April 1986, the Court finds the parties’ positions to be credible, and finds that the animosity level and inability of the parties to communicate renders the joint custody arrangement un *29 workable, and detrimental to the well-being and stability of the minor children.
Several things lead the Court, in choosing between the parents for an award of sole custody, to its determination that Mrs. Cahanin should be granted sole custody of the parties’ children. First, Mr. Cahanin has been held in contempt of court on two previous occasions (18 September 1985 for $500.00 and 18 December 1985 for nearly $8,000.00) for failure to pay support, and admitted in the proceedings that he failed to pay the January ADEPT program as ordered and is therefore again in contempt. His explanation that his actions were “civil disobedience” or the result of his poverty or want of means is unconvincing. In matters relating to the welfare of children, civil disobedience must take a “back seat”.
Second, much of Mr. Cahanin’s behavior with regard to these proceedings appears somewhat inappropriate, and in part to be in the nature of harassment of Mrs. Caha-nin. Particularly, the Court refers to Mr. Cahanin’s admission that he placed a funeral wreath on Judge Ellis’ door, his filing a contempt rule against Mrs. Cahanin for leaving town to attend her high school reunion, and his contempt rule against her for removing the children from the ADEPT program during the time he was not paying any support. This Court finds Mrs. Caha-nin’s behavior mature and exemplary under the circumstances; she continued to allow Mr. Cahanin full access to the children in spite of his behavior and his refusal to pay support. However, she should have consulted Mr. Cahanin before giving him the children on Christmas Eve instead of December 23 as scheduled, even though this was consistent with their prior practice.
The Court is convinced beyond reasonable doubt that, despite his behavior, Mr. Cahanin loves his children and cares deeply about their welfare and well-being. Considering this, his withholding of all support as an act of “civil disobedience” was inconsistent with his concern for the children, and indicative of his limited ability to put the children’s needs ahead of his own, or to refrain from using the courts and the children to exact revenge on Mrs. Cahanin. A more rigid and structured arrangement to limit the parties’ contacts with each other until they learn to communicate is indicated. (And in that regard, if the parties have not already done so, it would be desirable that they both read “Mom’s House, Dad’s House’’, by Isolina Ricci, Ph.D.)
Mrs. Cahanin testified that the alternating long weekends were acceptable, and did not cause difficulty. Therefore, Mr. Caha-nin should have the children every other weekend from 6:00 p.m. Friday until 6:00 p.m. the following Tuesday. Since the only difficulty with the intervening Monday was the overnight portion, and since Mr. Caha-nin objected to having the children on the alternate Mondays that were legal holidays, it would be appropriate to allow him to have dinner with the children on the intervening Tuesdays, from 6 p.m. to 8:30 p.m.
Mrs. Cahanin testified that she had no objection to the present alternating holiday situation, and therefore the holidays will continue to be alternated according to the schedule set out in the 23 February 1984 consent judgment. The Court also believes that the provisions for telephone calls and vacation will provide the continuing contact with both parents that is necessary for these children. This schedule may be amended only with the written agreement of the parties.
It is time for these parties to begin to put their differences aside, and stop using the courts to communicate with each other. The present pattern of litigation is not in the best interest of these children, and will only have a negative effect on them now and in the future. The time and money spent litigating can better be spent on the children.
On 31 October 1986, the motions by Mr. Cahanin for reduction in support and by Mrs. Cahanin for increase in support came for trial. Mr. Cahanin had been paying $400.00 per month for the support of his two children, from the time of the parties’ separation until the support was increased on 18 September 1985. It was increased to $350.00 every two weeks (which factors out to roughly $750.00 per month), in addition *30 to $36.00 per month during the summer (averaging $9.00 per month for 12 months), and one-half of the medical/dental expenses which Mr. Cahanin estimates to be $95.00 per month. This award, which amounts to $806.50 on a monthly basis ($750.00 + $47.50 + $9.00) was affirmed by the Court of Appeal, Fourth Circuit.
Before that appeal judgment was rendered, Mrs. Cahanin voluntarily agreed to a reduction on 18 September 1985, and signed a consent judgment which recited Mr. Cahanin’s reduction in income as a reason for the reduction of support to $350.00 per month cash, plus the cost of the morning and afternoon ADEPT program, summer camp, and all medical and dental bills up to $2,000.00 per year. Mr. Cahanin testified at length regarding his obligations under that order.
Mr. Cahanin testified that, under the 18 December 1985 consent judgment he pays $350.00 cash monthly through a wage assignment, $225.00 per month average for the ADEPT program and summer camp, and estimates a $95.00 monthly average medical and dental expense (up to a maximum of $2,000.00, per the judgment). This totals approximately $670.00 per month (more if medical/dental expenses exceed $95.00 per month, up to $2,000.00). He is also responsible for one-half of all medical bills after the annual total exceeds $2,000.00, and he is required to maintain dental and medical insurance.
Although the Court finds that Mr. Caha-nin’s income has increased by about 25% since that 18 December 1985 consent judgment, to approximately $2,100.00 per month (a little more than he was earning on 18 September 1985 when he was ordered to pay $750.00) and Mrs. Cahanin’s income is approximately $900.00 per month (changed little from either of the prior judgments), the Court finds that the amount set by the consent judgment was reasonable and clearly not unreasonable. Thus the total payment by Mr. Cahanin of $670.00 per month (although less than the $806.50 per month affirmed by the Court of Appeal, Fourth Circuit, when the parties were in nearly identical circumstances) is sufficient to meet the needs of the two children considering their present ages. The Court is not inclined to grant an increase at present.
However, the Court is convinced from a review of the past record and testimony in this proceeding that Mrs. Cahanin has had difficulty with the provisions which allow Mr. Cahanin to make direct payments of the ADEPT program and medical bills. There have been difficulties in obtaining dental treatment for the children due to Mr. Cahanin’s failure to timely pay the bills; Mr. Cahanin did not pay the ADEPT program last January as ordered, and it appears that as of the April 16 hearing he was late with that month’s payment. He also asserted the belief that because he was paying the bills that he could instruct the ADEPT program office not to speak with Mrs. Cahanin, and that he should and could control when the children would receive dental treatment. Considering the circumstances, it is unreasonable to expect Mrs. Cahanin to continue in this situation.
The Court finds that it would be in the best interest of the children for Mrs. Caha-nin to pay these ADEPT program and medical/dental expenses directly, thereby decreasing the contact between the parties over financial matters and the friction between them over payment for various items. Therefore Mr. Cahanin will pay the full $670.00 to Mrs. Cahanin through the existing wage assignment. The parties will equally divide all extraordinary medical and dental expenses (any treatment, illness, costing more than $1,000.00). This actually amounts to a decrease for Mr. Cahanin from what he is currently ordered to pay, since he is no longer responsible for all medical and dental bills up to $2,000.00, but instead is responsible for only one-half of the amount of any unreimbursed extraordinary medical and dental expenses over $1,000.00.
The Court finds that all other matters except those as set forth herein or in the judgment fall within the doctrine of de minimus non curat lex. However, the Court finds that Mr. Cahanin’s income is and was adequate at the time of the sign *31 ing of the order allowing him to proceed in forma pauperis such that this Court should not have allowed him to proceed in forma pauperis. The order was improvidently issued and will be recalled and vacated nunc pro tunc to the date the order was signed. A further hearing must be held to tax costs and to arrange an appropriate repayment schedule for Mr. Cahanin to repay to this Court those sums which this Court effectively advanced to him while he litigated as a pauper and for which he owes this Court reimbursement.
Judgment will be entered accordingly.
/s/ Max N. Tobias, Jr. JUDGE
6 January 1987.

. CA-4922 and C-9172 were paid and C-5810 was transferred to the Supreme Court, thus the Supreme Court should collect what ever it is owed on that writ.